UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

TERRY RAY MCDOWELL,
   Plaintiff,

vs.             No. 05-1312

JEFF HEFFREN, et.al.,
   Defendants

## SUMMARY JUDGEMENT ORDER

This cause is before the court for consideration of the defendants' motion for summary judgement. [d/e 57]

### I. BACKGROUND

The plaintiff's complaint alleges his constitutional rights were violated at the Illinois River Correctional Center by 8 defendants including Correctional Officers Jeff Heffren and Stan Whitlock; Bakery Instructors Jody Reed and Terry Sutter; Assistant Wardens Jerry Bohler and Richard Birkey; Bakery Superintendent John Dudek and Grievance Officer Julie Bohler. The plaintiff's surviving claims include:

> **1) Defendant Heffren violated the plaintiff's First Amendment right to the free exercise of his religion based on the disciplinary ticket the plaintiff received for performing a religious prayer.**
> 2) **Defendants Sutter, Reed and Dudek violated the plaintiff's equal protection rights when they fired the plaintiff from his prison job based on his race and religion.**
> 3) **Defendants Heffren, Sutter, Reed and Dudek conspired to remove the plaintiff from his job based on his race and religion.**
> 4) **Defendant Heffren violated the plaintiff's First Amendment rights when he wrote a May 17, 2004, disciplinary ticket against the plaintiff in retaliation for previous grievance against the defendant**.
> 5) **Defendant Whitlock violated the plaintiff's First Amendment right to the free exercise of his religion based on the confiscation of his religious tape**.
> 6) **Defendants Whitlock, Julie Bohler, Jerry Bohler and Birkey violated the plaintiff's equal protection rights based on the confiscation of his religious tape.**
> 7) **Defendants Whitlock, Julie Bohler, Jerry Bohler and Birkey conspired to deny the plaintiff his tape based on his race and religion.**

### II. FACTS

The following facts are taken from the motion for summary judgement, the plaintiff's

1

response and the attached exhibits.[1]

Defendant Heffren states on March 8, 2008, while doing a routine check in the bakery, he found the door to the dish room closed and a dish room worker standing outside. Heffren says when he opened the door, he saw the plaintiff on his hands and knees praying. The officer says he told the plaintiff to stand up, put his shoes on and go back to his assigned work area.

> McDowell's job assignment was across the bakery out on the floor as a depanner, so I gave him a direct order to stay out of the dish room. I did not deny offender McDowell the right to pray, I simply asked him not to do it in this work area. (Def. Memo, Ex. I, Heffren Aff., p. 1).

In his deposition, the plaintiff alleges he finished his prayer before he left the dish room. (Def. Memo, Ex. A, Plain. Depo, p. 7) The plaintiff also claims Defendant Heffren told him to pray in the bathroom.

Heffren says about two hours later, he saw the plaintiff in the dish room again. Heffren says he told the plaintiff since he had already given him a direct order to stay out of this room, it was time for him to go back to his housing unit. Heffren says he wrote a disciplinary ticket against the plaintiff, but had no authority to fire the plaintiff from his job. (Def. Memo, Ex. I, Heffren Aff., p. 1-2).

John Dudek says he is the Bakery Superintendent at Illinois River Correctional Center. Dudek says he has the authority to hire and fire inmate workers, but the vocational instructors do not. Dudek says on June 1, 2003, the plaintiff received an unfavorable employment evaluation. On March 8, 2004, Officer Heffren wrote the disciplinary report charging the plaintiff with insolence and disobeying a direct order. Dudek says since the plaintiff was away from his assigned work area with the door closed, he considered this violation a "security issue." (Def. Memo, Ex. F, Dudek Aff, p. 2). On March 9, 2004, the plaintiff received another unfavorable employment evaluation. (Def. Memo, Ex. F, Dudek Aff, p. 1) The plaintiff denies this, but admits receiving a disciplinary ticket.

> According to my records, I terminated McDowell from his job assignment on March 9, 2004. The decision to fire McDowell was based on the 3/08/07 disciplinary report as well as his two consecutive unfavorable employment evaluations. To the best of my recollection, I made this decision independently, without input from other staff. (Def. Memo, Ex. F, Dudek Aff, p. 1)

Dudek says offenders who receive disciplinary reports are not always immediately terminated from their jobs. However, the offenses of insolence and disobeying a direct order "do often trigger automatic termination." (Def. Memo, Ex. F, Dudek Aff, p. 2)

---

[1] The court notes that while the plaintiff did respond to the statement of uncontested facts, in some instances he simply states that he disagrees with the fact without providing any evidence to contradict the defendants' claims.

>Offenders who receive a C grade are automatically terminated from their
>(job) assignments by the Assignment Commitee. In this case, had I not
>terminated offender McDowell; he would have been terminated anyway
>by the Assignment Committee due to his receiving C grade on the
>3/08/04 disciplinary report. (Def. Memo, Ex. F, Dudek Aff, p. 2).

Officer Heffren says he wrote one other disciplinary ticket against the plaintiff on May 17, 2004. The officer says he observed the plaintiff walk into another inmate's cell and this is a violation of the Inmate Handbook. (Def. Memo, Ex. I, Heffren Aff. p. 2)

Stan Whitlock says he is a Correctional Officer at Illinois River Correctional Center. Whitlock says on November 22, 2003, he confiscated a religious Islamic cassette tape from the plaintiff. Whitlock says he took the tape because it had metal screws in it and these screws are considered contraband. Whitlock wrote a disciplinary report as a result. (Def. Memo, Ex. E, Whitlock Aff, p. 1).

Defendant Richard Birkey says he is the Assistant Warden of Operations at Illinois River Correctional Agency. He states that if contraband is found in an offender's possession at the correctional center, it is confiscated.

The defendants have presented an April 18, 2001 memorandum from the Associate Director of the Bureau of Operations on the issue of cassette tapes that was addressed to all Wardens in the Department of Corrections. The memo states that tapes "that contain screws in the case shall not be permitted." (Def. Memo, Ex. C, p. 4). The defendants also say the ban on tapes with screws was in the inmate handbook. The plaintiff claims it was not in the handbook that was originally given to him.

Birkey says to the best of his recollection, he never reviewed or received any of the plaintiff's grievances regarding the tape that was confiscated in November of 2003. Birkey says the Warden position was vacant at the time. Assistant Warden Bohler served as Acting Warden and would have reviewed grievances. Birkey says he was not aware of the plaintiff's confiscated tape until he received notice of this lawsuit. (Def. Memo, Ex. D., Birkey Aff, p. 1)

Melody Ford is the Chairperson of the Office of Inmate Issues. Ford says she has searched the records of the Administrative Review Board and found that there are no grievances regarding the conduct of Birkey, Jerry Bohler or Julie Bohler concerning the confiscation of a tape in November of 2003. In addition, Ford says there were no grievances received alleging that Heffren wrote a false disciplinary ticket in retaliation for a previous grievance.

Defendant Julie Bohler says she was a grievance officer during the relevant time frame of the complaint. Bohler says all grievances that are received are entered into a Grievance Log. However, a review of the Greivance Logs for 2003 and 2004 shows no indication of a grievance concerning the confiscation of the plaintiff's tape was received until May of 2004. The plaintiff filed a grievance then stating that his initial grievance had not been reviewed. Bohler says based "on the absence of a prior log entry, it was concluded that the initial grievance Plainiff alleges to

3

have filed was never recieved." (Def. Memo, Ex. G, Bohler Aff, p. 1)

Defendant Jerry Bohler says he is also an Assistant Warden at Illinois River Correctional Center. Bohler says during the time frame of the complaint, he was serving as Acting Warden at the institution. Bohler says in this capacity, he reviewed the plaintiff's grievance concerning the taking of his tape. Since the greivance was received in May of 2004 and dealt with an incident in November of 2003, it "was well out of the time frame" governing greivances and was therefore denied. (Def. Memo, Ex. H, Jerry Bohler Aff., p. 1). Bohler says he had no personal involvement with the confiscated tape.

### III. LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

### IV. ANALYSIS

A. FIRST AMENDMENT/ FREE EXERCISE OF RELIGION

Defendants Heffren and Whitlock argue that the plaintiff can not prevail on his First Amendment claims against them because he was not prevented from practicing his religion. In order for the plaintiffs to succeed on a claim that he was denied the free exercise of his religion, the plaintiff must first show: (1) that he espoused a *bona fide* religion, (2) that his beliefs are sincerely held, and (3) that the activity he wished to perform was essential to the practice of his religion. *Wisconsin v. Yoder*, 406 U.S. 205 (1972).

The restrictions on the plaintiff's practice of his religion is still valid if the defendants can demonstrate that they were reasonably related to legitimate penological interests. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *citing Turner v. Safley*, 482 U.S. 78(1987). Such interests can include inmate security and the proper allocation of limited prison resources. *Id.* at 348, 352-530. The Court of Appeals for the Seventh Circuit has identified several factors that can be used in applying the "reasonableness" standard:

> 1. whether a valid, rational connection exists between the regulation and a legitimate government interest behind the rule;
> 2. whether there are alternative means of exercising the right in question that remain available to prisoners;
> 3. the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and
> 4. although the regulation need not satisfy a least restrictive alternative test, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable.
> *Al-Alamin v. Gramley*, 926 F.2d 680, 685 (7th Cir.1991).

The defendants argue that the plaintiff cannot state a First Amendment claim against Defendant Heffren because the defendant never prevented the plaintiff from praying. The plaintiff admits that the first time he spoke with Defendant Heffren on March 8, 2004, the plaintiff was able to finish his prayer before he left the dish room. There is also no evidence that Defendant Heffren forbid the plaintiff from praying in other locations. In addition, the plaintiff also admits that when the Defendant found him in the dish room a second time, the plaintiff was not praying. Instead, the plaintiff was talking to two other prisoners. (Def. Memo, Ex. A, Plain. Depo. P. 7, 9). There is no evidence he received a ticket for performing a religious prayer and there is no evidence he was prevented from performing an activity that essential to the practice of his religion. The motion for summary judgement on this claim is granted.

The defendants also argue that there is no evidence that Defendant Whitlock prevented the plaintiff from performing an activity that was essential to the practice of his religion. Whitlock confiscated a tape from the plaintiffs cell which the plaintiff says "contained a speech by Minister Louis Farrakhan." (Plain Rep., p. 9). There is no evidence before the court that this tape was somehow essential to the plaintiff's ability to practice his religion. Even if the plaintiff could somehow pass this hurdle, the confiscation of the tape was related to the legitimate penological interest of safety and security within the prison. The plaintiff does not deny his tape had metal screws. Metal screws were prohibited at the correctional center and considered contraband  The motion for summary judgement on this claim is also granted.

The court notes that the plaintiff has responded to the defendants claims by arguing the standards of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. 2000bb-1. (Herein RLUIPA).  The plaintiff has no claims pursuant to RLUIPA before this court. On July 10, 2008, the plaintiff's second motion to amend his complaint was denied because: 1) the plaintiff was attempting to improperly bring unrelated claims in a single case, and 2) the court found the amendment would cause undue delay and would prejudice the defendants.  The plaintiff had filed his second motion after the close of discovery and after the defendants had filed a summary judgement motion.  The plaintiff was asking to add 26 new defendants, new allegations and new theories of law.

Nonetheless, even if the plaintiff had been allowed to proceed under RLUIPA, his claim would still fail.  While RLUIPA does guarantee prisoners greater freedom to engage in religious conduct that the First Amendment, the plaintiff must still show the defendants' actions created a substantial burden on the exercise of his religious beliefs. 42 U.S.C. §2000cc-2(b).  While RLUIPA does not define the term "substantial burden," the Seventh Circuit has held that it is "one that necessarily bears a direct, primary, and fundamental responsibility for rendering religious exercise...effectively impracticable." *Civil Liberties for Urban Believers v. City of Chicago,* 342 F.3d 752, 761 (7th Cir. 2003).  In other words, a plaintiff:

> must submit evidence demonstrating that the burden imposed denied them something distinctly important for effective religious practice.  An inmate's unreasoned say-so is not enough to show a material issue of fact on this question. *Gelford v. Frank,* 2008 WL 896792 at 2 (April 2, 2008).(citations omitted).

The evidence before the court demonstrates the plaintiff was never denied the opportunity to pray.  In addition, the plaintiff has failed to demonstrated that a tape of a speech meets the burden required for RLUIPA.

B. EQUAL PROTECTION

The defendants argue that the plaintiff also cannot demonstrate that the violated his Equal Protection rights.  A person bringing a action under the Equal Protection Clause must show *intentional* discrimination against him *because of his membership in* a *particular class,* not merely that he was treated unfairly as an individual." *Huebschen v. Dept. of Health and Social Serv.*, 716 F.2d 1167, 1171 (7th Cir. 1983) (emphasis added).  "The decision maker [must have] selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *citing Personnel Admin. v. Feeney*, 442 U.S. 256, 279 (1979) (footnote omitted).  *Sims v. Mulcahy*, 902 F.2d 524, 538-41 (7th Cir.), *cert. denied* 498 U.S. 897, 111 S.Ct. 249, 112 L.Ed.2d 207 (1990); *Davis v. Frapolly*, 717 F.Supp. 614, 616 (N.D.Ill.1989); and *Cuautle v. Tone*, 851 F.Supp. 1236, 1242 (CD Ill. 1994).

The plaintiff alleges that Defendants Sutter, Reed and Dudek violated his equal protection rights when they fired him from his job based on his race and religion.  First, there is no evidence before this court that Defendants Reed or Sutter had the authority to fire the

plaintiff.   A defendant cannot be held liable under 42 USC §1983 unless the plaintiff can demonstrate that the defendant's caused or participated in the alleged constitutional violation. *McBride v. Soos*, 679 F.2d 1223, 1227 (7th Cir. 1982).

Second, there is no evidence that the plaintiff was fired on the basis of his race or religion.  The defendants say the plaintiff received two consecutive unfavorable employment evaluations.   The plaintiff disputes he received a second unfavorable evaluation, but admits he did receive a disciplinary ticket on March 8, 2004 for insolence and disobeying a direct order while he was on the job.   The evidence before the court also demonstrates that the plaintiff was not prevented from praying when he received that disciplinary ticket and there is no evidence to suggest it was written as a result of his prayer.

Finally, the plaintiff admits that other Muslims worked in the bakery and that "the same things that I was doing, every other worker was allowed to do; but then as soon as I did it, now of a sudden it becomes a problem." (Def. Memo, Ex. A., Plain. Depo, p. 8)   The plaintiff cannot meet his burden of proving intentional discrimination based on his race or religion.   The motion for summary judgement on this claim is granted.

The plaintiff next alleges that Defendants Whitlock, Julie Bohler, Jerry Bohler and Birkey violated his equal protection rights based on the confiscation of his religious tape.  First, there is no evidence that Defendants Julie Bohler, Jerry Bohler or Birkey had any involvement with this claim.  Defendant Birkey was not involved with the review of grievances and was not aware of the plaintiff's claim.   Defendant Bohler did receive the grievance, but since it was not submitted during the required time frame, it was not accepted or reviewed.   Grievance Officer Bohler says there is no record the plaintiff submitted a grievance to her on this issue.

Even if the defendants had all been involved with the confiscation of the plaintiff's tape, the plaintiff again can not show it was an act of intentional discrimination.   Officer Whitlock took the tape because it had metal screws in it and it was considered contraband.   The defendants have demonstrated that metal screws were prohibited at the time due to safety and security issues.

The plaintiff in his complaint alleges that other inmates had Christian tapes with metal screws around Christmas time and no one took those tapes.  However, there is no evidence before the court that the defendants had knowledge of any inmates possessing Christian tapes with metal screws.  The motion for summary judgement on this claim is granted.

C.  CONSPIRACY

The defendants argue that the plaintiff's claims of conspiracy must fail as a matter of law.   The plaintiff alleges that Defendants Heffren, Sutter, Reed and Dudek conspired to remove him from his job based on his race and religion and Defendants Whitlock, Julie Bohler, Jerry Bohler and Birkey conspired to deny the plaintiff his tape based on race and religion.

A conspiracy is a "combination of two or more persons acting in concert to commit an unlawful act, or...a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." *Richardson v. City of Indianapolis,* 658 F.2d 494, 500 (7th Cir. 1981)(internal quotations omitted). However, since the court has found that the defendants did not violate the plaintiff's First Amendment or Equal Protection rights, there can be no conspiracy to violate the plaintiff's civil rights. The motion for summary judgement on these two claims is granted.

D.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

The defendants also argue that the plaintiff has failed to exhaust his administrative remedies for his claim that Defendant Heffren wrote a disciplinary ticket on May 17, 2004, in retaliation for a previous grievance and that Defendants Birkey, Jerry Bohler and Julie Bohler violated his equal protection rights. The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. §1997e(a).

The court has already determined that the plaintiff does not have a conspiracy claim. As to his retaliation claim, the Chairperson of the Office of Inmate Issues says she has searched the records of the Administrative Review Board and found that there are no grievances alleging that Heffren wrote a retaliatory disciplinary ticket on May 17, 2004.

The plaintiff has presented no evidence in his response to the dispositive motion that he ever filed a grievance concerning this ticket. The plaintiff simply says he put a grievance in the mail system and its not his fault if it was never received. While the plaintiff has provided copies of other grievances, he provides no copies of any grievance on this issue. In addition, the plaintiff did attach a document to his First Amended Complaint which is a standardized memo from the Administrative Review Board signed on December 14, 2004. The memo indicates the Board received correspondence and possibly a grievance form from the plaintiff regarding the events of May 17, 2004. However, the plaintiff did not follow the proper procedures. He did not include the required copy of the Committed Person's Grievance Report, nor did he provide a copy of the initial grievance. Finally, the plaintiff did not submit his paperwork within the required time frame. There is no evidence the plaintiff followed the proper procedures to either file a grievance or appeal a grievance concerning the May 17, 2004 ticket. Therefore, the court must dismiss this claim for failure to exhaust administrative remedies.

**IT IS THEREFORE ORDERED that:**

> **1.    The defendants' motion for summary judgment is granted [d/e 57]. The clerk of the court is directed to enter judgment in favor of the defendants**

       **and against the plaintiff pursuant to Fed. R. Civ. P. 56. The case is terminated, with the parties to bear their own costs.**

2. **If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal** *in forma pauperis* **should set forth the issues the plaintiff plans to present on appeal.** *See* **Fed. R. App. P. 24(a)(1)©. If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate a strike under 28 U.S.C. 1915(g).**

3. **The agency having custody of the Plaintiff is directed to remit the docketing fee of $250.00 from the plaintiff's prison trust fund account if such funds are available. If the plaintiff does not have $250.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $250.00 is paid in its entirety. The filing fee collected shall not exceed the statutory filing fee of $250.00.**

4. **The plaintiff is responsible for ensuring the $250.00 filing fee is paid to the clerk of the court even though his case has been dismissed. Release from incarceration does not relieve the plaintiff of his obligation to pay the filing fee in full. The plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such change.**

Enter this 22nd day of September, 2008.

                                          s\Harold A. Baker
                                  _____
                                        HAROLD A. BAKER
                              UNITED STATES DISTRICT JUDGE